IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JESSICA HARCROW                                                                    PETITIONER

v.                              5:21-CR-50029-001

UNITED STATES                                                                    RESPONDENT

## REPORT AND RECOMMENDATION

Petitioner Jessica Harcrow ("Petitioner") filed her 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on July 26, 2022 (ECF No. 176). The Court directed a response from the United States ("Respondent") on August 15, 2022, (ECF No. 181), which was filed on October 5, 2022 (ECF No. 189). The Motion was referred to the undersigned for Report and Recommendation pursuant to Rule 72.1 (VIII)(B)(1) of the Local Rules for the United States District Court for the Eastern and Western Districts of Arkansas. The matter is now ripe for consideration.

### I.      Background

On November 19, 2021, and in exchange for dismissal of the remaining charges, Petitioner pled guilty to conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and money laundering in violation of 18 U.S.C. § 1957. (ECF No. 88). Petitioner appeared in the U.S. District Court for the Western District of Arkansas, Fayetteville Division, before U.S. District Judge Timothy L. Brooks on March 16, 2022, and was sentenced to the Federal Correctional Institute, Aliceville for a term of two hundred eighty (280) months. (ECF No. 133).

On March 21, 2022, Petitioner appealed her sentence to the Court of Appeals for the Eighth Circuit on the grounds that the district court erred in applying an enhancement under the United States Sentencing Guidelines ("U.S.S.G.") for committing a drug offense as part of a

pattern of criminal conduct engaged in as a livelihood.  (ECF No. 137).  Petitioner's counsel moved to withdraw and filed the appellate brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).  *United States v. Harcrow*, 2022 WL 2448290 at *1 (8th Cir. 2022).

On July 6, 2022, the Eighth Circuit upheld the district court's application of the enhancement. *Id*. The appellate court held that the record supported Judge Brooks' finding that Petitioner engaged in a pattern of criminal conduct as a livelihood as Petitioner had admitted drug sales were her primary source of income, allowing her to accumulate at least $26,000 during one year, as well as admitting she had distributed large quantities of drugs. *Id*. Additionally, upon an independent review of the record under *Penson v. Ohio*, 488 U.S. 75 (1988), the Eighth Circuit found no non-frivolous issues for appeal. *Id*. Petitioner now seeks relief pursuant to 28 U.S.C § 2255.

## II.    Petition for Habeas Corpus

A federal prisoner who believes that her sentence violates the Constitution or laws of the United States, or that the sentence exceeded the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.  28 U.S.C. § 2255(a).  The court may grant the motion if it finds the judgment was not authorized by law or is otherwise open to collateral attack, or if there was such a denial or infringement on the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.  28 U.S.C. § 2255(b).

Petitioner alleges several grounds for habeas relief under § 2255.  (ECF No. 176).  First, Petitioner alleges she was wrongly charged with money laundering because her co-defendant, Jeremy Thornton ("Thornton"), was an equal participant in obtaining a money order to acquire Oklahoma real property (on which their trailer was located) which was purchased in both of their

names.  Second, Petitioner alleges the Court erred in applying the "stash house" enhancement to her sentence because the drugs considered by the Court for purposes of applying the enhancement were at the Oklahoma property for a controlled buy between Thornton and a confidential informant.  Finally, Petitioner alleges the Court erred in applying the firearm enhancement to her sentence because the gun was found within a locked safe which was not listed in the search warrant.

### III.    Discussion

This Court's review of the § 2255 Petition and the records of the Petitioner's case conclusively illustrate that she is not entitled to relief, and the undersigned recommends denial and dismissal of her § 2255 Motion with prejudice and without conducting an evidentiary hearing.

### A.    Timeliness

Section 2255(f) establishes a 1-year limitations period for filing motions.  The 28 U.S.C. § 2255(f) limitations period runs from the latest of:

**(1)**    The date on which the judgment of conviction becomes final;

**(2)**    The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

**(3)**    The date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(4)**    The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Petitioner timely filed her *Pro Se* Motion under § 2255 on July 26, 2022, within the 1-year period, and thus, the timeliness of Petitioner's Motion is not at issue.

### B.      Procedural Default

Petitioner alleges grounds for habeas relief by challenging her money laundering charge and two enhancements applied to the base offense level of the advisory U.S.S.G. range.  Because Petitioner did not raise any of these errors on appeal, she is procedurally defaulted from raising the claims here. Section 2255 petitions do not function as a second direct appeal, and issues raised for the first time in a habeas proceeding are procedurally defaulted unless the defendant demonstrates cause for the default and prejudice or demonstrates actual innocence.  *United States v. Meeks*, 742 F.3d 841, 857 (8th Cir. 2014); *United States v McNeal*, 249 F.3d 747, 749 (8th Cir. 2001). With respect to actual innocence, legal insufficiency of evidence to support a conviction is not enough to demonstrate the required showing. *Dejan* 208 F.3d at 686. Instead, Petitioner must demonstrate that "in the light of all the evidence, it is more likely than not that no reasonable juror would have convicted [her]" of the offense.  *United States v. Bousley*, 523 U.S. 614 (1998).

Petitioner does not allege actual innocence.  Petitioner instead contends her claims were not included in her appeal because her counsel failed to see the importance of raising the claimed sentencing errors. (ECF No. 176). As explained below, Petitioner has failed to illustrate facts demonstrating prejudice. Because Petitioner fails to allege actual innocence, or demonstrate cause and prejudice, her claims are procedurally defaulted, and her § 2255 Motion must be denied.  Moreover, for reasons set forth below, Petitioner's Motion should be denied on its merits.

## C.      Money Laundering

Petitioner argues she was improperly charged with money laundering in violation of 18 U.S.C. § 1957.  Her basis for the claim is that her co-defendant, Thornton, was not charged with money laundering but participated in the laundering and is therefore equally culpable of the offense.  This claim lacks merit.

Prosecutors are granted broad discretion in deciding whether to prosecute and what charges to bring so long as the prosecution has probable cause to believe the accused committed an offense and the selection was not made using an unjustifiable standard such as race. *See Bordenkircher v. Hayes*, 434 U.S. 357, 368 (finding that because defendant was properly charged under statute and the decision to prosecute was not based on an unjustifiable standard, the prosecution did not abuse discretion); *Wayte v. United States*, 470 U.S. 598, 607 (1985) (finding that factors weighed by prosecutors such as the strength of a case or enforcement priorities were ill-suited for judicial review).

The Court first observes that guilty pleas waive all defects except jurisdictional defects. *United States v. Todd*, 521 F.3d 891, 895 (8th Cir. 2008). When entering into her guilty plea, Petitioner expressly waived the right to raise non-jurisdictional defects in her conviction. (ECF No. 88). Petitioner does not raise any jurisdictional defect, and this Court observes none are present.  During her plea hearing with Judge Brooks, Petitioner admitted to each element of the laundering charge, including obtaining a cashier's check for $26,000 in her name, opening the bank account that held the $26,000 prior to the real estate transaction, and earning at least part of the money from methamphetamine sales. (ECF Nos. 87, 88). Petitioner also admitted that drug dealing was her primary source of income. *Id*.

Petitioner seems to allege that her sentencing was improper because Thornton was equally culpable of money laundering. (ECF No. 176). In this regard, Petitioner claims Thornton was equally culpable because she and Thornton jointly and equally provided the money for the real estate purchase, "50/50." Petitioner says Thornton allegedly carried the money into the bank with Petitioner and the land was purchased in both Petitioner's and Thornton's names. (ECF No. 176). Petitioner's contentions regarding Thornton's similar culpability bears no impact on Respondent's view of Petitioner's culpability.

Petitioner neglects to include facts suggesting Respondent possessed any improper motive for its prosecution of Petitioner or its decision not to prosecute Thornton for money laundering. (ECF No. 176). Upon review of the record, there is sufficient basis to conclude Respondent ascertained that Petitioner directed Thornton in their criminal enterprises and thereafter exercised its discretion to deciding to prosecute Petitioner based on her culpability. (ECF No. 119). Thus, Petitioner's claim for relief premised on Respondent's failure to charge Thornton with money laundering should be denied.

### D.    Stash House

Petitioner next argues that the district court erroneously applied the "stash house" enhancement because the drugs seized were present at the property for a controlled buy between Thornton and a confidential informant. (ECF No. 176).

Under U.S.S.G. § 2D1.1(b)(12), "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels." "Stash house" enhancements apply to a "defendant who knowingly maintains a premises (i.e., a building, room or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." § 2D1.1(b)(12) cmt. n. 17.

When determining whether a defendant "maintained" the premises, courts weigh factors including whether the defendant held a possessory interest in the premises, and the extent to which the defendant controlled activities on the premises.  *Id.*

On May 13, 2021, investigators with the Oklahoma Bureau of Narcotics (OBN) obtained a search warrant for Petitioner and Thornton's property and trailer in Kansas, Oklahoma after arranging for a controlled buy of methamphetamine. (ECF No. 119). On the following day, May 14, 2021, OBN and Federal Bureau of Investigation (FBI) agents conducted a search of the property, seizing several items including:  2.475 kilograms of methamphetamine, packaging materials, scales, pipes, and firearms.  (ECF No. 119).

At her sentencing, Petitioner raised an objection to application of the "stash house" enhancement on the grounds that Petitioner did not reside at the trailer where the seizure occurred. (ECF No. 114, p. 7-8). The district court overruled the objection, finding that Petitioner's use of another location as a primary residence was irrelevant, and that Petitioner's primary purpose for owning the trailer was for the storage of methamphetamine.  (ECF 114, p. 51).  Analysis then turned to the trailer's actual location on property owned by Petitioner; the volume of drugs seized from the property; and the trailer's convenient proximity to Petitioner's other residences as proof Petitioner maintained the trailer to store ("stash") methamphetamine. (ECF 114, p. 48-49). The district court determined the "stash house" enhancement was appropriate based on the agents' search of the trailer, Petitioner's purchasing of the property almost one year earlier using the proceeds of drug trafficking (while residing elsewhere), and the primary use of the trailer for drug trafficking.  (ECF No. 119).

Petitioner's reformulated § 2255 stash house argument is entirely unpersuasive; as noted, the record before the district court unequivocally illustrates that both Petitioner and Thornton

demonstrated a predisposition to drug trafficking. (ECF No. 119). More importantly, Petitioner's guideline range already included the maximum of three hundred sixty (360) months before the "stash house" enhancement was applied, and thus application of the enhancement had no meaningful impact on calculation of Petitioner's guideline range (or imposition of sentence). (ECF No. 119). In the absence of prejudice arising from the district court's application of the "stash house" enhancement, § 2255 affords Petitioner no relief.

Petitioner's companion argument is that large quantities of methamphetamine were seized at the trailer because of a controlled buy set up by law enforcement. (ECF No. 176). Petitioner suggests that Thornton was entrapped by the confidential source (CS) although it is unclear how Petitioner believes this would entitle her to § 2255 relief.

Participation in the drug trade through controlled buys by agents or informants is a recognized way for the Government to achieve drug convictions. *United States v. Russell*, 411 U.S. 423, 423 (1973). Concerns arise only where agents induce criminal conduct. Inducement to commit a crime is more than just providing an individual the opportunity to break the law; Petitioner must demonstrate that "[she] was not predisposed to commit the crime[s] independent of the government's activities." *U.S. v. Williams*, 720 F.3d 674 (8th Cir. 2013) (finding the government did not induce Williams to sell drugs because Williams had sold marijuana before). To distinguish between an unwary innocent and an unwary criminal, courts examine if: 1) the government induced the criminal conduct, and 2) whether there was an absence of criminal disposition in the defendant. *Id.*

The record supports that Petitioner and Thornton demonstrated their predisposition to drug trafficking much earlier than the controlled buy arranged by officers in May of 2021. Prior to the warrant and subsequent arrests, Petitioner's drug trafficking was the subject of a two-year

investigation by Arkansas and Oklahoma law enforcement. (ECF No. 119). During this period, Petitioner and her co-defendants made multiple methamphetamine sales. For example, on August 26, 2019, a CS purchased 2 ounces of methamphetamine from Petitioner and on September 6, 2019, a CS purchased another 2 ounces of methamphetamine from her. (ECF No. 119). On February 21, 2020, a CS purchased an additional 1 ounce of methamphetamine from Petitioner. (ECF No. 119). On May 11, 2020, Thorton sold approximately 1 kilogram of methamphetamine to an OBN agent. (ECF No. 119). On April 26, 2021, Thornton told a CS that he had three pounds of methamphetamine at his residence and invited the CS to use and purchase methamphetamine at the trailer. (ECF No. 119). Following her arrest, Petitioner admitted to receiving an average of one to two pounds of methamphetamine per week, admitting that drugs provided the primary source of her income. (ECF No. 119). Petitioner also admitted to arranging for a third party to receive the methamphetamines seized from her property on May 14, 2021. (ECF No. 119). There is neither a factual nor legal basis for Petitioner's unpersuasive entrapment argument.

The Court pauses to consider a related argument – sentencing manipulation – which occurs when government stretches out investigation to increase the defendant's sentence. *U.S. v. Booker*, 639 F.3d 1115 (8th Cir. 2011) (finding the lapse in time between the first and second controlled buy during an investigation did not provide evidence of sentencing manipulation). It goes without saying that Government investigations take time to "probe the depths and extent of criminal enterprises, and a lapse of time in an investigation is not enough to prove manipulation. *Id.* While Petitioner does not expressly contend Respondent prolonged the investigation into Petitioner's drug trafficking to increase her sentencing, the Court finds no factual basis for believing a sentencing manipulation occurred. Lapses in time between the controlled buys can

9

be explained by the record before the district court which reflects a robust and thorough investigation into the drug trafficking activities of Petitioner and her co-defendants. Nothing in the record suggests that Respondent induced any criminal behavior by Petitioner or manipulated the investigation to increase Petitioner's sentence.

For these reasons, Petitioner contentions related to the district court's application of the § 2D1.1(b)(12) "stash house" sentencing enhancement should be denied.

### E.   Firearm

Petitioner then argues that the district court erroneously applied the firearm enhancement because the firearm that the district court considered was found within a locked safe which was not listed in the search warrant for the trailer. (ECF No. 176). This argument lacks merit because the warrant authorized the search of the entire premises, including containers found within the premises.

"A lawful search extends to all areas and containers in which the object of the search may be found." *United States v. Schmitz,* 181 F.3d 981, 988 (8th Cir. 1999) (finding that the warrant authorized search of the defendant's closet because the object of the warrant's search included items of clothing); *United States v. Neal,* 528 F.3d 1069, 1074 (8th Cir. 2008) (finding that film canisters located in gun safe were included in scope of search warrant because the warrant authorized officers to search for firearm-related items, which included the safe); *United States v. Johnson*, 709 F.2d 515, 516 (8th Cir. 1983) (finding that officers were authorized to remove a safe found in the defendant's bedroom and later open the safe at the police station without the defendant's consent because the warrant authorized the search of the entire property); *United States v. Thompson*, 690 F.3d 977, 992 (8th Cir. 2012) (finding that the warrant for "17 Russell Street, Apartment 9, Basement" authorized officers to unlock and search a storage room next to

the apartment using keys found in the apartment search).  If the object of the search could fit within a container found within the premises of the warrant, and officers reasonably believe the object could be found within the container, the container may be opened immediately.  *United States v. Ross*, 456 U.S. 798, 823 (1982).

At her sentencing, Petitioner objected to the application of the firearm enhancement on the grounds that Thornton owned the firearm.  (ECF No. 114, p. 52).  The district court overruled the objection, finding the weapon was present at the drug premises and clearly connected to drug trafficking. (ECF No. 114, p. 53). In so concluding, the district court pointed to the agents' discovery of the gun in the safe alongside drug paraphernalia and methamphetamine, and the safe's proximity to the trailer's kitchen, where a majority of the methamphetamine was located. The district court again noted that Petitioner's name was on the property records for both the trailer and the property, demonstrating that Petitioner maintained and exercised control of the property and the items within the trailer.  (ECF No. 114, p. 52).

Petitioner now pivots to argue the firearm enhancement should not have been applied because the gun was found in a locked safe within the trailer which agents opened after taking the key from Thornton, arguing the search warrant did not explicitly include search of the safe. (ECF No. 176).  Petitioner's argument ignores that the search warrant properly authorized the search of the trailer for drugs, including containers that reasonably contained methamphetamine. (ECF No. 119).  Because the warrant authorized the search of a defined premises (the trailer) for drugs, the warrant also authorized the search of any containers (i.e., safes) on the premises that might reasonably conceal drugs, drug paraphernalia or other evidence of trafficking. *See Ross*, 456 U.S. at 820; *Johnson*, 709 F.2d at 516.  The record reflects that the safe was in a bedroom of

the trailer, adjacent to where OBN agents found 2.475 kilograms of methamphetamine and drug paraphernalia. (ECF Nos. 119, 125).

In *Johnson*, the Eighth Circuit found that a warrant for the premises authorized officers to seize a floor safe from the defendant's bedroom and to thereafter open the safe at the police station without the defendant's consent. *Johnson*, 709 F.2d at 516.  The officers' authorization to open the safe at the location of discovery extended their authorization to open the safe at a later time and at a different location. *Id.*   In *Thompson*, the Eighth Circuit found that a warrant to search a premise authorized officers to unlock a storage room adjacent to the defendant's apartment without the defendant's consent. *Thompson*, 690 F.3d at 992. Because the officers took the key to the storage room from the defendant's key ring and the defendant was the only tenant on the basement floor, the Eighth Circuit held that the warrant for the defendant's residence included the storage room and its contents. *Id.* The appellate court found the officers reasonably believed the storage room contained drugs or drug paraphernalia based on the drugs found in Thompson's apartment and based upon his history of drug trafficking; a second warrant was not required.  *Id*.

Like *Johnson*, the OBN agents executing the warrant at Petitioner's trailer opened the safe without the consent of Thornton; their warrant authorized them to open the safe because it was contained within the premises described by the search warrant. Given that the court in *Johnson* found the warrant authorized the officers to open the safe at a second location, the agents here were well within their authority to open the safe at the trailer after taking the keys from Thornton.  Like *Thompson*, the OBN agents took the key from Thornton to unlock the safe located in the trailer.  Based on the methamphetamine and drug paraphernalia found in the trailer kitchen, the safe's proximity to the kitchen, and Respondent/Thornton's history of drug

trafficking, the agents were reasonable in their belief that the safe could contain drugs and/or evidence of drug trafficking. A second warrant was unnecessary, and the firearm seized was not improperly considered by the district court at the time of sentencing. For these reasons, Petitioner's arguments that the firearm enhancement was improperly applied must be denied.

## F.      Ineffective Counsel

Out of an abundance of caution, this Court construes Petitioner's allegation that her counsel "did not see [Petitioner's claims] to be important" as an ineffective assistance of counsel claim.

There is a strong presumption that a defendant's counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 696. To successfully bring an ineffective assistance of counsel claim, the defendant must prove 1) that counsel's performance fell below an objective standard of reasonableness, and 2) that the deficient performance prejudiced the defendant. *Id*. at 690; *Bryson v. United States,* 268 F.3d 560 (8th Cir. 2001) (dismissing the ineffective assistance of counsel claim because the allegations were brief, conclusory, and failed to cite to the record, so the court could not begin to apply the *Strickland* test). After consideration, the Court finds that Petitioner's allegations fail to meet the standards put forth in *Strickland v. Washington.* 466 U.S. 688 (1984).

## 1.      Standard of Reasonableness

To satisfy the first prong of the test, a defendant must show that the counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688. The defendant must illustrate that counsel failed to uphold the duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691 (finding the defense counsel's strategy of not requesting pre-sentencing report, psychiatric eval, or further

13

mitigating evidence was reasonable because defendant pled guilty and waived right to jury at trial). This determination examines the facts of the case at the time of the trial, not in hindsight. *Id.* at 690.

Petitioner does not offer any proof that her counsel's performance fell below the objective standard of reasonableness. To the contrary, the record shows that Petitioner's counsel successfully sought a downward sentencing variance, and as a result, Petitioner received a sentence 80 months below the advisory guideline range of 360 months. (ECF Nos. 124, 133). When submitting Petitioner's appeal under *Anders*, Petitioner's counsel upheld her obligation not to advance meritless claims while simultaneously recognizing Petitioner's right to appeal. *Harcrow*, 2022 WL 2448290 at *4. Petitioner's claim thus fails to satisfy the first prong of the *Strickland* test.

### 2.    Prejudice to Defendant

To satisfy the second prong of the *Strickland* test, the defendant must also show that the ineffective assistance of counsel prejudiced the defendant. *Id*. at 668. The defendant must show that there is a "reasonable probability" that if not for her counsel's insufficient performance, the results of the proceedings would have been different. *Id*. at 694. Unlike the first prong of the test, when examining the potential prejudice faced by the defendant, the court is allowed to issue judgment based on hindsight. *Lockhart v Fretwell* 506 U.S. 364, 371 (1993).

Even with the benefit of hindsight, establishing a sufficiently prejudicial effect on the proceedings is a high bar for any defendant to clear. *See Strickland,* 466 U.S. at 700 (finding that even if Strickland's counsel had fallen below the objective standard of reasonableness, the defendant failed to show a sufficiently prejudicial effect to warrant setting aside the death penalty based on the defendant's conduct); *United States v. White*, 341 F.3d 673 (8th Cir. 2003)

(finding that based on the defendant's history of selling drugs and a taped admission of drug dealing, his counsel's failure to conduct any independent investigation, failure to call any witnesses at trial, failure to submit a trial brief, and participation in trial only through cross-examination was not prejudicial enough to find insufficient assistance of counsel).

Even if Petitioner's counsel's performance fell below the objective standard of reasonable performance for sentencing – and, for the record, the Court does not find it did – counsel's performance would not have prejudiced the proceedings. Given the totality of evidence, including but not limited to, Petitioner's history of selling drugs, the volume of methamphetamine seized at Petitioner's trailer, maintenance of a stash house, and a recorded jail call where Petitioner admitted to being the ringleader behind the drug trafficking, the outcome of Petitioner's sentencing likely would have been the same regardless of her counsel's performance. (ECF Nos. 119, 144).  As noted above, counsel achieved a sentencing variance for Petitioner which was significant.  Thus, Petitioner fails to meet the second prong of the *Strickland* test, and to the extent her pleadings allege an ineffective assistance of counsel claim, it should be dismissed.

### G.      No Evidentiary Hearing

As observed herein, resolution of each of Petitioner's claims can be accomplished through reviewing the record and applying the governing law. Summary dismissal of Petitioner's § 2255 Motion without an evidentiary hearing is recommended.  *See United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005).

### H.      No Certificate of Appealability Warranted

A Certificate of Appealability may be issued under 28 U.S.C. § 2253 only if the movant has made a substantial showing of the denial of a constitutional right.  A "substantial showing"

requires the demonstration "that reasonable jurists could debate whether the petition should have been resolved in a different manner" or that the issues deserved further proceeding. *Slack v. McDaniel*, 529 U.S. 472, 483-84 (2000). Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

For the reasons state herein, it is recommended that Petitioner's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 176) be **DENIED** and **DISMISSED WITH PREJUDICE**. It is further recommended that a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 18th day of November 2022.


*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE